# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA CANTRELL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 C 10696 |
| FIDELITONE, INC. d/b/a FIDELITONE LOGISTICS, | ) ) ) ) | Hon. Marvin E. Aspen |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Cantrell filed this lawsuit against her former employer, Fidelitone, Inc., alleging numerous violations of state and federal laws prohibiting discrimination in employment. Pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act, Fidelitone filed a motion to dismiss or, in the alternative, to stay the case pending the parties' participation in an alternative dispute resolution process. (Dkt. No. 9.) For the reasons discussed below, we stay the case.

## BACKGROUND[1]

In September 2013, Fidelitone hired Cantrell as its Director of Human Resources, to report to its Chief Marketing Officer, Joe Giglio. (Compl. ¶ 7.) According to her offer letter, dated September 22, 2013, ("Offer Letter"), Cantrell was required to sign a non-solicitation agreement, as well as an acknowledgement form, prior to beginning her new position. (Resp.,

---

[1] When evaluating a motion brought under Rule 12(b)(3), as here, we may examine facts outside the complaint, while taking all of the allegations of the complaint as true. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008); *Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006); *Interlease Aviation Inv'rs II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). Accordingly, the facts as described herein are culled from Cantrell's complaint, as well as from the materials provided by the parties with their briefs.

Ex. A (9/22/13 Offer Ltr.).) On her first day, Cantrell signed the Confidentiality, Assignment of Inventions, and Non-Solicitation Agreement ("Confidentiality Agreement") as referenced in the Offer Letter. (Reply, Ex. A at 19 (Dkt. No. 19-1).) That same day, September 30, 2013, she also signed the acknowledgement form, in which she acknowledged that she had received the Fidelitone handbook and that she was required to familiarize herself with it as well as with Fidelitone's "other policy statements and procedures." (Reply, Ex. A at 17.) Cantrell also reviewed and signed various other forms and policies, including policies about usage of personal communication devices, family and medical leave, computer and internet usage, social networking, and workplace harassment. (*See* Reply, Ex. A.) In addition, Cantrell executed an Employee Mandatory Alternative Dispute Resolution Agreement ("ADR Agreement"). (Mem., Ex. A (Dkt. No. 10-1).) Cantrell signed all of these documents on September 30, 2013.

According to the complaint, within her first week of work, Cantrell began to notice and attempt to address unlawful and discriminatory employment practices. (Compl. ¶¶ 27–29.) In short, Cantrell alleges that upper management at Fidelitone insisted on hiring, supporting, and advancing only individuals who were "[w]hite, young, and full of energy." (*Id.* ¶ 28; *see also id.* ¶¶ 29–34, 36–45, 49–55.) Cantrell further alleges that, to perpetuate this "employee profile," Fidelitone systematically discriminated against women, non-whites, employees over 40, and employees who suffer from disabilities and/or require medical leave. (*Id.*) She specifically contends that Fidelitone discriminated against her based on her age and gender. (*Id.* ¶¶ 65–67, 72, 76, 83–84, 89–90, 94–97.) Cantrell also alleges that she was retaliated against after speaking up about Fidelitone's ongoing discriminatory practices, ultimately resulting in her wrongful termination on May 2, 2014. (*Id.* ¶¶ 23, 33–34, 37, 40–42, 45–47, 51–56, 59–67.)

In response to the complaint, Fidelitone filed the present motion. Fidelitone argues that Cantrell is obligated to proceed with mandatory mediation and/or arbitration pursuant to the ADR Agreement. Cantrell opposes the motion and argues that the ADR Agreement is invalid.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the application and interpretation of arbitration clauses in commercial contracts, including employment-related agreements, for both state and federal courts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–112, 121 S. Ct. 1302, 1307 (2001); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987); *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The statute reflects a liberal policy recognizing arbitration as a means of settling disputes. 9 U.S.C. § 1; *see Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l*, 1 F.3d 639, 641 (7th Cir. 1993); *Davis v. Fenton*, 26 F. Supp. 3d 727, 735 (N.D. Ill. 2014). The FAA provides that a party to an arbitration agreement may ask a court to stay a pending lawsuit before it if "the issue involved in such suit . . . is referable to arbitration under such agreement" and to "direct[] that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §§ 3–4. To obtain an order to compel, the moving party must show: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Rest., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (internal quotation omitted); *Davis*, 26 F. Supp. 3d at 735–36.

Despite the strong policy supporting arbitration, courts ultimately interpret arbitration agreements based on the intent of the parties, as with all contracts. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). Indeed, "[w]hen deciding whether the parties agreed to arbitrate a certain

matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rest., Inc.*, 765 F.3d at 781 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68, 130 S. Ct. 2772, 2776 (2010); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002); *Davis*, 26 F. Supp. 3d at 735–36. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 151, 847 N.E.2d 99, 109 (Ill. 2006); *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26, 830 N.E.2d 619, 624 (1st Dist. 2005). A court cannot force a party to arbitrate a claim it has not previously agreed to arbitrate. *Druco Rest., Inc.*, 765 F.3d at 781; *Kiefer Specialty Flooring, Inc. v. Tarkett*, 174 F.3d 907, 909 (7th Cir. 1999); *Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1255 (7th Cir. 1993) (citing *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986)). A court also may not expand the application of an arbitration clause beyond its intended scope. *Am. United Logistics*, 319 F.3d at 929; *AGCO Corp.*, 216 F.3d at 593; *Int'l Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 230 (7th Cir. 1993).

## ANALYSIS

With these principles in mind, we turn to the parties' arguments. Fidelitone contends that the ADR Agreement obligates Cantrell to participate in mediation and/or arbitration. In opposition, Cantrell argues that the ADR Agreement is unenforceable and, moreover, that requiring her to arbitrate her claims will be prohibitively expensive. We consider each argument below.

4

### A. Enforceability of the ADR Agreement

As the parties' obligations are governed by the ADR Agreement, if valid, we begin with the language of the contract. In the ADR Agreement, signed by Cantrell, she "acknowledge[s] and agree[s] that [Fidelitone] . . . uses a system of alternative dispute resolution which involves binding mediation and/or arbitration to resolve all disputes which may arise out of the employment context." (ADR Agreement.) It further provides that "the parties agree that any claim, controversy or dispute that arises out of or relates to this [ADR Agreement], [Cantrell's] employment with [Fidelitone], the cessation of [her] employment . . . or any breach of this [ADR Agreement], shall first be attempted to be resolved through mediation in Lake County." (*Id.*) The ADR Agreement explains that, if the parties cannot agree on a mediator, "the parties also agree that any claims, controversy or dispute covered in this Agreement shall be submitted to and decided by arbitration before a single arbitrator in a forum of the American Arbitration Association ('AAA')." (*Id.*) In signing the ADR Agreement, Cantrell "give[s] up her rights to bring any cause of action in a court of law . . . and [her] rights to a bench or jury trial for any or all claims covered under this agreement." (*Id.*)

The ADR Agreement includes one substantial caveat, however. Fidelitone reserves the right to "obtain injunctive and related relief in a court of law for any violations of the [Confidentiality Agreement]" separately signed by Cantrell. (*Id.*) In other words, should Cantrell breach her Confidentiality Agreement, Fidelitone "has the option to elect between arbitration and a judicial forum." (*Id.*)

Cantrell contends that the ADR Agreement is unenforceable due to lack of consideration for her waiver of rights. "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the

5

promise." *Vassilkovska*, 358 Ill. App. 3d at 26, 830 N.E.2d at 624 (quoting *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)); *see Chatman v. Pizza Hut, Inc.*, 12 C 10209, 2013 WL 2285804, at *3–4 (N.D. Ill. May 23, 2013) ("Consideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance.") (internal quotation omitted); *Cook v. River Oaks Hyundai, Inc.*, 06 C 376, 2006 WL 931685, at *1 (N.D. Ill. Apr. 5, 2006). Cantrell raises two arguments in this attack on the ADR Agreement.[2] First, Cantrell argues that her employment was not contingent on her execution of the ADR Agreement, as it was with the Confidentiality Agreement. As a result, she claims the ADR Agreement stands alone, lacking consideration.[3] Second, she contends that the ADR Agreement lacks mutuality, because she was required to give up her rights while Fidelitone was not. We begin with the second argument, which we find dispositive.

Even construing the ADR Agreement as a stand-alone contract, as Cantrell asserts, there may be sufficient consideration as long as the ADR Agreement binds both parties. "For stand-alone arbitration agreements, '[o]ften, consideration for one party's promise to arbitrate is the other party's promise to do the same.'" *Cook*, 2006 WL 931685, at *1 (quoting *Gibson*, 121 F.3d at 1131); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999); *see Vassilkovska*, 358 Ill. App. 3d at 26–27, 830 N.E.2d at 624; *Lopez v. Plaza Fin. Co.*, 95 C 7567, 1996 WL 210073, at *3–6 (N.D. Ill. Apr. 25, 1996) ("Under Illinois law, mutuality of obligation

---

[2] Cantrell does not argue that her claims are not covered by the ADR Agreement.

[3] "Employment itself can be consideration for an employee's agreement to arbitrate." *Domin v. River Oaks Imports, Inc.*, 11 C 3876, 2011 WL 5039865, at *2 (N.D. Ill. Oct. 24, 2011); *Melena*, 219 Ill.2d at 152, 847 N.E.2d at 109. Cantrell claims that her employment is not consideration here, however, because neither her offer letter, nor the ADR Agreement, tied her employment to her execution of the ADR Agreement. We are not entirely persuaded by this position, as Cantrell executed the ADR Agreement on her first day of employment, at the same time that she executed all of the other policies and forms, including the Confidentiality Agreement. But in any event, we need not reach the issue.

requires that either both parties be bound, or neither be bound."). Under Illinois law, "the promises exchanged need not be identical or even equal to constitute sufficient consideration." *Cook*, 2006 WL 931685, at *2; *Vassilkovska*, 358 Ill. App. 3d at 26–27, 830 N.E.2d at 624 (acknowledging that "the parties do not have to agree to identical obligations to . . . have a valid and enforceable arbitration agreement"); *see Lopez*, 1996 WL 210073, at *4. For example, if "each party agrees to submit at least 'some specified class of claims' to arbitration," their mutual promises will suffice as consideration. *Cook*, 2006 WL 931685, at *2 (quoting *Truckenbrodt v. First Alliance Mortg. Co.*, 96 C 1822, 1996 WL 422150, at *2 (N.D. Ill. July 24, 1996)); *Vassilkovska*, 358 Ill. App. 3d at 28–29, 830 N.E.2d at 626–27; *see Lopez*, 1996 WL 210073, at *4 (citing *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir. 1985)). That being said, "if only one party to a stand-alone arbitration agreement is bound to arbitrate its claims, and the other party is not required to arbitrate *any* claims, the supposed promise to arbitrate is illusory and does not constitute valid consideration." *Cook*, 2006 WL 931685, at *2; *see Druco Rests., Inc.*, 765 F.3d at 782 ("An illusory promise is a promise which by its terms makes performance entirely optional with the promisor."); *Gonzalez v. W. Suburban Imports, Inc.*, 411 F. Supp. 2d 970, 972 (N.D. Ill. 2006); *Lopez*, 1996 WL 210073, at *4; *see Vassilkovska*, 358 Ill. App. 3d at 28–29, 830 N.E.2d at 626–27 (concluding that an agreement that "creates a total exclusion of one party's obligation . . . is illusory").

The question before us is whether the ADR Agreement obligates both parties to participate in mediation and/or arbitration, or whether Fidelitone's promise to arbitrate is simply illusory. Here, we have a one-page agreement read and signed by Cantrell, a human resources professional, on her first day. Although the ADR Agreement includes some first-person language specific to Cantrell—such as "I understand and agree," and "I give up my rights"—its

7

terms unambiguously apply to both parties. The ADR Agreement plainly states that "the parties agree that any claim, controversy or dispute that arises out of or relates to this [ADR Agreement], [Cantrell's] employment with [Fidelitone], the cessation of [her] employment . . . or any breach of this [ADR Agreement], shall first be attempted to be resolved through mediation." (ADR Agreement.) Under the ADR Agreement, if no mediator can be selected, "the parties also agree that any claims, controversy or dispute . . . shall be submitted to and decided by arbitration" before the AAA. (*Id.*) The ADR Agreement further states that "[a]ny arbitration award shall be final and binding upon the parties." (*Id.*) By this language, Fidelitone has mutually promised to proceed with the arbitration of employment-related claims by and against Cantrell, and, moreover, to be bound by an arbitrator's decision. This promise is sufficient under Illinois law to constitute consideration for Cantrell's mutual promise to arbitrate. *Michalski*, 177 F.3d at 636 (finding that the defendant's "promise to be bound by the arbitration process itself serves as mutual consideration here"); *see also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 363, 367–68 (7th Cir. 1999) (concluding that the agreement signed by plaintiff had adequate consideration, in part because the form "bound both parties to the rules of the designated [exchanges] and allowed arbitration at the insistence of either party").

Cantrell argues that Fidelitone's promise is illusory, however, because it carved out of the ADR Agreement any claims it might have against Cantrell for violation of the Confidentiality Agreement. The ADR Agreement unquestionably includes this exception and allows Fidelitone to pursue judicial resolution for alleged violations of the Confidentiality Agreement. According to Cantrell, claims brought under the Confidentiality Agreement (i.e., breach of the non-solicitation provision, disclosure of confidential information, etc.) are, as a practical matter, the only types of claims that Fidelitone could assert against her. (Resp. at 8–9.) As a result, Cantrell

contends that Fidelitone has not made any real promise in the ADR Agreement, because it preserved its own right to sue Cantrell in court for any claim it might have. *See, e.g.*, *Gibson*, 121 F.3d at 1131 (concluding that arbitration agreement was unenforceable where it did not contain any promise on defendant's part); *Domin*, 2011 WL 5039865, at *2 (finding agreement invalid where it could not be read "in a way that would bind both [plaintiff] and [d]efendants to submit any and all of their claims to arbitration"); *Gonzalez*, 411 F. Supp. 2d at 971–81 (holding that broad exemptions included in arbitration agreement for defendant rendered its promise illusory); *Lopez*, 1996 WL 210073, at *4 (denying motion to compel where defendant could not "identify any class of legitimate claims it might bring" that would be covered by the purported arbitration agreement); *Vassilkovska*, 358 Ill. App. 3d at 28–29, 830 N.E.2d at 626–27 (affirming denial of motion to compel where defendant's promise was "an empty one" and it could not identify any "claim that it would be compelled to submit to arbitration" under the agreement).

For its part, Fidelitone contends that there are additional types of claims it is bound to arbitrate under the ADR Agreement. (Reply at 6–8.) Fidelitone identifies several causes of action that it concedes would fall outside the scope of the Confidentiality Agreement. (*Id.* at 6–7.) For example, Fidelitone points out that employers not uncommonly sue their employees for claims such as: "unjust enrichment, breach of the duty of loyalty, breach of fiduciary duty, tortious interference with contractual relationships, fraudulent misrepresentation, conversion, violations of the Illinois Trade Secrets Act, violations of the Computer Fraud and Abuse Act, and others." (*Id.* at 6.) Fidelitone argues that, given Cantrell's position with the company, it is conceivable that these types of claims could arise and, if so, it would be obligated to pursue them against her in mediation and arbitration per the ADR Agreement. (*Id.* at 7.)

9

We agree with Fidelitone. Although the exemption in the ADR Agreement for claims arising under the Confidentiality Agreement is not insignificant, it is not so broad as to encompass all legitimate claims that Fidelitone might pursue against an employee, including Cantrell. Fidelitone "has shown that it has promised to arbitrate some specified class of actions, which is sufficient" to establish mutuality under Illinois law. *Cook*, 2006 WL 931685, at *2 (finding mutuality where defendant identified "several types of claims that it would be compelled to arbitrate") (internal quotation omitted); *see Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, 01 C 4312, 2001 WL 1568817, at *5 (N.D. Ill. Dec. 10, 2001) (upholding arbitration agreement that "appear[ed] to favor [d]efendant" but did "impose obligations on both parties"); *Thompson v. Ill. Title Loans, Inc.*, 99 C 3952, 2000 WL 45493, at *2–3 (N.D. Ill. Jan. 11, 2000) (finding adequate consideration where defendant "has promised to arbitrate at least some claims," even if it did not agree to arbitrate a default claim, admittedly "the most frequent claim" it might assert); *Truckenbrodt*, 1996 WL 422150, at *2 (granting motion to compel where, outside of exemptions, "defendants must submit at least some legitimate claims to arbitration"); *Hill-Harris v. Gingiss Int'l, Inc.*, 91 C 6682, 1992 WL 57952, at *3–4 (N.D. Ill. Mar. 20, 1992) (enforcing arbitration agreement where, despite several exemptions, it obligated defendant to arbitrate certain claims).

Additionally, Fidelitone's reciprocal agreement to arbitrate some types of claims differentiates this case from those cited by Cantrell. In those cases, the parties seeking to compel arbitration had eviscerated their own promises to arbitrate by inserting all-encompassing exceptions, had failed to identify any claims surviving the exceptions, or both. *See, e.g.*, *Gibson*, 121 F.3d at 1131; *Domin*, 2011 WL 5039865, at *2; *Gonzalez*, 411 F. Supp. 2d at 971–81; *Lopez*, 1996 WL 210073, at *4; *Vassilkovska*, 358 Ill. App. 3d at 28–29, 830 N.E.2d at 626–27.

Because the ADR Agreement here does not "create[] a total exclusion of [Fidelitone's] obligation to arbitrate," its promise is not illusory. *Vassilkovska*, 358 Ill. App. 3d at 29, 830 N.E.2d at 626. We conclude that Fidelitone's promises to arbitrate claims that fall outside the Confidentiality Agreement, and to be bound by arbitration for Cantrell's claims, constitute sufficient consideration to support the ADR Agreement.

### B. Burden of Proceeding to Arbitration

As a second argument opposing the motion, Cantrell contends that enforcing the ADR Agreement would be prohibitively expensive for her. She states that she has not yet found a new job and would be unable to pay the costs and fees associated with arbitration, which could amount to several thousand dollars. (Resp. at 13–14; *see also* Resp., Ex. D (2/9/16 Cantrell Aff. ¶¶ 2–4) (Dkt. No. 18-4).) Citing to the AAA's Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules"), she asserts that she will incur large initial and final fees and will be required to bear half of the arbitrator's expenses. (Resp. at 13; *see also* Resp., Ex. C.) Cantrell contends that these costs will exceed those she would face in her federal lawsuit and will preclude her from vindicating her rights. (Resp. at 13–14.)

"A legitimate reason to deny arbitration may exist if a party would be 'saddled with prohibitive [arbitration] costs.'" *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000)); *Bahoor v. Varonis Sys., Inc.*, 15 C 5490, 2015 WL 9460573, at *6–7 (N.D. Ill. Dec. 28, 2015); *see Ragan v. AT&T Corp.*, 355 Ill. App. 3d 1143, 1159–61, 824 N.E.2d 1183, 1196–97 (5th Dist. 2005). In evaluating Cantrell's argument, we consider her burden if she is required to proceed with arbitration, as well as the cost differential between arbitration and litigation. *Bahoor*, 2015 WL 9460573, at *6.

Although we do not doubt that Cantrell has limited funds to pursue her claims against Fidelitone, we cannot conclude that arbitration will be cost-prohibitive. As Fidelitone points out, for purposes of calculating her estimated costs, Cantrell appears to be relying on AAA Employment Rules that would not likely apply to her claims. Cantrell asserts that her claims will be covered by the AAA Employment Rules governing independently-negotiated employment contracts, rather than those applying to employer plans. (Resp. at 13–14 (citing to AAA Employment Rules at 37–41, which apply to "Disputes Arising Out of Individually-Negotiated Employment Agreements").) But, as Fidelitone explains, its dispute resolution process—based on a standard agreement, rather than a negotiated agreement—is an employer plan, subject to rules more favorable to employees. (Reply at 8–9 & nn.5–6.) For example, the AAA Employment Rules for employer plans provide that the "employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion" thereof. (Resp., Ex. C (AAA Employment Rules at 33).) These rules also address related costs and state that "[a]ll expenses of the arbitrator, including required travel and other expenses, and any AAA expense, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer." (*Id.* at 35.) *See also Fuqua v. SVOX AG*, 382 Ill. Dec. 655, 658–59, 668, 13 N.E.3d 68, 71, 81 (1st Dist. 2014) (noting that the commercial AAA Employment Rules impose a greater burden on employees than the employer-plan rules). Accordingly, Cantrell's concerns about prohibitive expenses under the AAA Employment Rules are unfounded.

Fidelitone, moreover, concedes that it must pay the arbitrator's compensation under the AAA Employment Rules. It further agrees to pay the $250 deposit, as well as the "the costs of any mediator's compensation (to the extent that there is any question about who should bear such

expenses).") (Reply at 8 n.6.) Fidelitone also expressed willingness to formally waive "any applicable fee-splitting provisions." (*Id.*) Based on Fidelitone's representations and our interpretation of the AAA Employment Rules, an order compelling arbitration will require Cantrell to pay only the $200 nonrefundable filing fee.[4] (Reply at 8; AAA Employment Rules at 33.) On the record before us, we find that this fee is not cost-prohibitive and will not hinder Cantrell's ability to seek relief for Fidelitone's alleged discrimination and retaliation.

## CONCLUSION

For the reasons discussed above, we hold that the ADR Agreement is enforceable. Pursuant to Section 3 of the FAA, we grant Fidelitone's motion to stay this lawsuit pending the outcome of mediation or arbitration under the ADR Agreement.[5]

The parties shall report to the Court as to the status of the arbitration proceedings at 10:30 a.m. on July 21, 2016.

It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: March 24, 2016
       Chicago, Illinois

---

[4] Of course, Cantrell remains responsible for the costs of investigating and pursuing her claims before the arbitrator. But she has not suggested, and we have no reason to believe, that those expenses would be any greater in arbitration than in litigation here.

[5] We decline to dismiss this case, as requested by Fidelitone, but issue the mandatory stay set forth in Section 3. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (internal quotation omitted)).